IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ROMMELL RIGGINS #318-857
        Petitioner           :

        v.           :   CIVIL ACTION NO. PJM-12-930

WARDEN JOHN WOLFE, et al.   :
        Respondents

## MEMORANDUM OPINION

### Procedural History

On March 22, 2012, self-represented Petitioner Rommell Riggins filed the instant 28 U.S.C. § 2254 habeas corpus petition attacking his convictions for two counts of first-degree robbery with a dangerous or deadly weapon, two counts of use of a handgun in the commission of a felony or crime of violence, one count of possession of a short-barreled shotgun, and one count of possession of a regulated firearm by a felon. ECF No. 9, Ex. 1-2. After it was determined that the Petition was not time-barred (ECF Nos. 9 and 10), Respondents John Wolfe, Warden of the Jessup Correctional Institution, and Douglas F. Gansler, the Attorney General of the State of Maryland, filed a Response addressing the substantive merits of Petitioner's remaining two claims: that his separate convictions and sentences for armed robbery and use of a handgun in the commission of a felony or crime of violence violate the principles of double jeopardy; and the trial court erred in informing the jury that he previously had been convicted of a felony when he was willing to stipulate that he had been convicted of a crime for which he was prohibited from possessing a regulated firearm.[1] ECF No. 12. Petitioner has filed a Reply to the Response (ECF No. 20). After review, the court finds no need for an evidentiary hearing. *See*

---

[1] These grounds were presented on direct appeal. For that reason, Respondents are not required to submit Petitioner's post-conviction hearing transcript. Petitioner's motion for default, which also seeks to compel Respondents to provide him a copy of the post-conviction transcript (ECF No. 19), is therefore denied.

Rule 8(a), *Rules Governing Section 2254 Cases in the United States District Courts* and Local Rule 105.6 (D. Md. 2011); *see also Fisher v. Lee*, 215 F.3d 438, 455 (4th Cir. 2000) (petitioner not entitled to a hearing under 28 U.S.C. § 2254(e)(2)).  For the reasons addressed herein, the Petition will be denied.[2]

**Background**

On December 11, 2003, Petitioner was convicted by a jury in the Circuit Court for Baltimore City.  ECF No. 9, Ex. 1-2.  On February 17, 2004, the Court sentenced Petitioner to a total term of twenty-five years' incarceration, which included a five-year non-parolable sentence for the conviction of being a felon in possession of a firearm. *Id.*  A motion for modification of sentence was denied on March 19, 2004. *Id.,* Ex. 1, p. 6. By an unreported opinion filed on January 19, 2006, the Court of Special Appeals of Maryland vacated Petitioner's sentence for possession of a short-barreled shotgun on the ground that it should have been merged into his convictions for use of a handgun in the commission of a crime of violence or a felony, but otherwise affirmed the judgment of conviction. *Id.,* Ex. 2. The Court of Appeals denied Petitioner's request for certiorari review on May 12, 2006.[3] *Id.,* Ex. 3.

On November 17, 2006, Petitioner filed a post-conviction petition in the Circuit Court for Baltimore City. *Id.,* Ex. 1, p. 8. On August 11, 2008, the Circuit Court granted Petitioner's

---

[2] Petitioner's second motion for appointment of counsel (ECF No. 21) shall be denied.  There is no Sixth Amendment right to counsel to pursue a petition for habeas corpus. *See Pennsylvania v. Finely*, 481 U.S. 551, 555 (1987).  A court may provide counsel for an indigent prisoner pursuing a petition for habeas corpus if "the court determines that the interests of justice so require."  18 U.S.C. § 3006A(2)(B).  Rule 6(a) of the Rules Governing Section 2254 Cases provides that a court may appoint counsel if it is "necessary for effective utilization of discovery procedures."  Rule 8(c) mandates that counsel be appointed only "[i]f an evidentiary hearing is required."  The undersigned concludes that neither discovery nor a hearing is mandated in this case, and Petitioner has the wherewithal to present his arguments to the Court.

[3] Riggins's judgment of conviction became final for direct appeal purposes on August 10, 2006, when the time for seeking further review in the United States Supreme Court expired. *See* Sup. Ct. Rule 13.1 (petition for certiorari to be filed within 90 days of date of judgment from which appeal is sought).

2

motion to withdraw his post-conviction petition. *Id.*, p. 10. On March 23, 2009, Petitioner reactivated post-conviction proceedings by filing an amended petition for post-conviction relief. *Id.* After holding a hearing on July 2, 2009, the Circuit Court denied post-conviction relief on October 14, 2009. *Id.*, p. 11. Petitioner did not file an application for leave to appeal this Order within the 30 days required by law; however, on June 8, 2010, the Circuit Court issued an order deeming Riggins's application for leave to appeal the denial of post-conviction relief timely filed. *Id.*, pp. 11-12. By unreported opinion filed on August 10, 2011, the Court of Special Appeals summarily denied the application for leave to appeal, with the court's mandate issuing on September 12, 2011. *Id.,* Ex. 4.

On August 19, 2010, while his post-conviction proceedings were still pending, Petitioner filed a motion to correct an illegal sentence in the Circuit Court, which was denied on August 25, 2010. *Id.,* Ex. 1, p. 14. Petitioner appealed this ruling, and the Court of Special Appeals affirmed the Circuit Court's ruling in an unreported opinion filed on November 3, 2011. *Id.,* Ex. 5. Petitioner's request for further review of this judgment by the Court of Appeals was denied on February 9, 2012. *Id.,* Ex. 6.

The relevant facts adduced at trial and recounted by the Court of Special Appeals of Maryland follow:

> At the trial in December 2003, Robert Gordon testified that he owned Gordon's Cycle Shop on West 36th Street in Baltimore City, where he sold and repaired mopeds. At about 5:30 p.m. on May 8, 2003, Mr. Gordon and his wife, Katherine Gordon,**2** were at work when a man, whom Mr. Gordon later identified as appellant, came into the shop, aimed a shotgun at Mr. Gordon's face, and told him to get off the telephone. Mrs. Gordon was seated nearby, working on the computer. When Mr. Gordon hesitated, appellant stated: "I'm not playing, get off the phone now." After Mr. Gordon hung up the phone, appellant ordered the Gordons into a storage room. Mr. Gordon observed another man with appellant. At trial, he identified Earl Jenkins as that man.
>
> Mr. Gordon explained that he recognized appellant because he had been

3

in the Cycle Shop two other times that same day. The first time appellant entered the shop he spoke with Mrs. Gordon, and spent "close to an hour at the store." On that occasion, Mr. Gordon saw appellant "on a couple different occasions close up." Mr. Gordon explained that although he was busy with other customers, he "kept looking back in the store because my wife was in there alone and I like to keep an eye on her."

At approximately 5:00 p.m., appellant returned to the Cycle Shop for the second time. During this visit, Gordon assisted him in looking at helmets in a catalogue. Appellant also tried on a pair of gloves. Mr. Gordon estimated that appellant remained in the shop for fifteen to twenty minutes. Within ten minutes of appellant's departure from the store, he returned again, this time with a shotgun.

Mr. Gordon recalled that, once the Gordons were forced into the storage room, appellant handed the shotgun to Jenkins. Appellant then "made a lot of noise basically." When Mr. Gordon asked appellant what he was doing, appellant responded that he was "taking some mopeds out the front of the store." Using a chain from the wall, appellant attempted to chain the Gordons to some file cabinets in the storage room. When he was unable to do so, appellant directed the couple into the bathroom. Mr. Gordon saw appellant place the shotgun in a reddish colored gym bag before he shut the bathroom door. Appellant barricaded the bathroom door with a tool box and shelving.

After a few seconds, when Mr. Gordon no longer heard anything, he pushed his way out of the bathroom and "hit the alarm box." He recalled that Jenkins who was "around the corner," was, "startled by the alarm and he grabbed the bike and started running up eastward on 36th Street." Mr. Gordon ran out of the store, yelling that he was being robbed and that one of the men had a shotgun.

Initially, Mr. Gordon did not see appellant but, as he chased Jenkins, he saw Riggins on a blue moped[3] at the corner of Roland Avenue and 36th Street, turning down Roland. Mr. Gordon chased Jenkins, who was running alongside the moped; Jenkins dropped the bike and ran around the corner at Roland Avenue. At that point, Mr. Gordon saw a policeman in a marked patrol car and informed him that he had just been robbed. The officer pursued and detained Jenkins.

According to Mr. Gordon, a paddy wagon "pulled up"[4] about ten or fifteen minutes after the robbery. An officer opened the back door and asked Mr. Gordon, "is this the guy that robbed your store. . . ." Mr. Gordon answered, "yes, that's him." Mr. Gordon also identified the red bag that was found near appellant as the bag into which appellant had placed the shotgun. According to Mr. Gordon, appellant touched many things in the store during the course of the robbery including the mopeds, the chain, the file cabinet, and

4

the bathroom door.

Baltimore City Police Officer Andrew McCarty testified that, on the
in question, he received a radio communication, about a robbery
suspect in the area of West 36th Street. He located appellant in "a grassy area, weedy with bushes," approximately 240 yards from the corner of 36th Street and Roland Avenue; he was lying face down "in the weeds." Officer McCarty found "[l]ike a, sport bag, kind of reddish, maroon in color," situated about two to three feet from appellant. A sawed-off shotgun, five rounds, several screwdrivers, a wrench, and various other items were inside the bag. McCarty made an in-court identification of appellant as the man he found lying face down in the weeds.

Officer Hugh Carter testified that, on the date in question, he was on patrol on 36th Street when he observed one African-American male pushing a red scooter and a second African-American male on a blue scooter. The man on the blue scooter drove east on 36th Street, turned right onto Roland Avenue, and the officer lost sight of him. The other man dropped the red scooter and ran down Roland Avenue, where the officer apprehended him. Within seconds, Mr. Gordon approached and stated that his shop had just been held up by two black males armed with a sawed-off shotgun. Officer Carter then broadcast a description of the man on the blue scooter.

Officer Carter further recalled that, after appellant was apprehended and transported back to 36th Street, he advised the officer that "he lost his glasses when he was getting away in the alley." Appellant also stated that "he had a hard time seeing and he would appreciate it if we could get his glasses for him." From the alley where appellant was found the police recovered the blue scooter as well as a pair of wire-framed glasses that appellant identified as belonging to him.

Mrs. Gordon made an in-court identification of appellant as the robber. She testified that, on the date in question, she spent "at least an hour with" appellant "going over the mopeds." Mrs. Gordon recalled that appellant returned to the shop a second time and asked about helmets. Then, appellant came, into the shop a third time. On that occasion, said Mrs. Gordon, he "put a shotgun in my husband's face."

Lorraine Laney, who was assigned to the fingerprint unit of the
Baltimore City Police Department Crime Lab, testified that nineteen latent fingerprints were taken from the Cycle Shop. Several of the prints were run through an automated system and an identification was made for Shawnice Gardner. Lansey was never asked to compare appellant's prints to those recovered from the shop.

In the defense case, appellant testified that he had never been to

5

Gordon's Cycle Shop, nor had he ever met the Gordons, whom he denied robbing. Moreover, appellant maintained that he was not hiding in the bushes when he was arrested; rather, he was selling marijuana. According to appellant, Officer McCarty took eighteen bags of marijuana and more than $600 from appellant.**5** Appellant added that he never saw the red bag until he was arrested. Appellant explained that the officer took the bag from the trunk of his patrol car. Appellant also testified that he never before saw the shotgun, which had been introduced in evidence. He added: "I have never held a gun before in my life."

In addition, appellant denied telling Officer Carter that he had dropped his eyeglasses, denied stealing the blue moped, and denied that he knew Earl Jenkins. Further, Riggins testified that Officer McCarty kicked his walking cane out of his hand, told him to lay down on the concrete, and arrested him. Appellant explained that he used a cane because he has osteoarthritis and a torn ligament in his knee, which would have prevented him from running.

The State called several witnesses in rebuttal. Earl Jenkins testified that he was not involved in the robbery and denied pleading guilty to robbery with a dangerous weapon two days earlier. The State introduced into evidence a written statement that bore Mr. Jenkins's signature. It indicated that, on the date of the robbery, Jenkins "met up with this guy" at a 7-11 store who said that "he wanted to get a scooter." Jenkins believed that the man was going to get the scooter out of a yard, but they walked into a store where, the next thing Jenkins knew, the other man pulled a shotgun out of his bag, pointed it at the people, and ordered them into a back room. When Jenkins and the other man left the store, Jenkins pushed a scooter outside, but he could not get it started. Eventually, he dropped the scooter and ran. Jenkins was then stopped by the police and arrested. At one point during the incident, the other man had given the shotgun to Jenkins, but Jenkins gave it back to him as they were leaving.

Jenkins conceded that his signature was at the bottom of the statement, but testified that he did not write the statement, nor did he read it before signing it. Further, he claimed that he had never before seen appellant.

Phillip Levine, Jenkins's attorney, testified that, on December 9, 2003, Jenkins entered a guilty plea in the case. During that proceeding, Levine, with Jenkins's permission, apologized to the Gordons on Jenkins's behalf.

Detective Thomas Wolfe, who was involved in processing appellant after his arrest, was also called in rebuttal. He testified that appellant never informed him that money had been stolen from him by the police; that a gym bag had been placed next to him, by the arresting officer; or that a shotgun had been planted on him.

Officer Mack Taylor stated in rebuttal that he was working with Officer

> McCarty on the evening in question and was involved in apprehending appellant. He recalled that he had spotted appellant "laying under a bush." The reddish bag was on the ground, approximately one foot from appellant, and contained a shogun. Officer Taylor denied that Officer McCarty took the bag out of the patrol car to frame appellant. Moreover, Officer Taylor denied taking any drugs or money from appellant, or planting any evidence on him.

---

**2** Mrs. Gordon's name appears as Katherine in the transcript and in the State's brief, and Catherine elsewhere in the record and in appellant's brief. We shall use the spelling that appears in the transcript.

**3** We note that the witnesses refer variously to the items taken from Gordon's Cycle Shop as mopeds, scooters, and bikes.

**4** At trial, Mr. Gordon did not testify to his location when the wagon "pulled up."

**5** Appellant first testified that he had $645 in his possession, but later stated that it was $685. Exhibit 2 at 2-9.

---

Following sentencing, Petitioner through counsel raised the following claims on direct appeal:

1. Did the trial court err in permitting the State, in violation of *Carter v. State*, 374 Md. 693 (2003), to inform the jury that appellant had previously been convicted of a felony when appellant was willing to stipulate that he had been convicted of a crime for which he was prohibited from possessing a regulated firearm?

2. Did the trial court err or abuse its discretion in overruling defense objections to the prosecutor's questions eliciting evidence of appellant's post-arrest silence?

3. Did the trial court err or abuse its discretion in admitting the hearsay statements of appellant's alleged accomplice?

4. Did the trial court err or abuse its discretion in admitting the hearsay and opinion testimony of the attorney who represented appellant's alleged accomplice?

5. Did the trial court err or abuse its discretion in restricting defense counsel's cross-examination of a key rebuttal witness?

6. Did the trial court err in denying appellant's motion to suppress the showup identification?

7. Did the trial court err or abuse its discretion in restricting appellant's testimony regarding the circumstances surrounding the show-up identification? and

8. Did the trial court err in imposing separate sentences for appellant's convictions for possession of a short-barreled shotgun and use of a handgun in commission of a crime of violence?

ECF No. 18, Ex. 11, p. 2; *see also* Exhibits 2, 12-13. After the intermediate appellate court vacated Petitioner's sentence for possession of a short-barreled shotgun but otherwise denied relief, Petitioner filed a self-represented petition for a writ of certiorari on three issues:

1. Did the trial court err in permitting the State, in violation of *Carter v. State*, 374 Md. 693 (2003), to inform the jury that appellant had previously been convicted of a felony when appellant was willing to stipulate that he had been convicted of a crime for which he was prohibited from possessing a regulated firearm?

2. Did the trial court err or abuse its discretion in admitting the hearsay statements of appellant's alleged accomplice? and

3. Did the trial court err or abuse its discretion in admitting the hearsay and opinion testimony of the attorney who represented appellant's alleged accomplice?

*Id.,* Ex. 14. Petitioner did not seek further review in the United States Supreme Court after certiorari was denied by the Court of Appeals. His petition seeking post-conviction relief raised several claims of ineffective assistance of counsel, a claim of prosecutorial misconduct, and several claims of judicial error, none of which are at issue here.

Petitioner now alleges he is unlawfully held in custody for the following reasons:

1. His separate convictions and sentences for armed robbery and use of a handgun in the commission of a felony or crime of violence violate the principles of double jeopardy, ECF No. 1 and 1-1; and

2. The trial court erred in informing the jury that he previously had been convicted of a felony when he was willing to stipulate that he had been convicted of a crime for which he was prohibited from possessing a regulated firearm. ECF No. 12.

## Preliminary Matters

*Exhaustion of State Remedies*

Petitioner's claims have been presented on direct appeal to the Maryland Court of Appeals, and do not rely on facts or arguments substantially different than those already asserted in State court; therefore, the claims are properly exhausted for purposes of federal habeas corpus review.

*Statute of Limitations*

Respondents do not contend – and the Court does not find – that the Petition is time-barred pursuant to 28 U.S.C. § 2244(d).

## Standard of Review

The federal habeas statute, 28 U.S.C. § 2254, as amended, provides a "highly deferential standard for evaluating state-court rulings," *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997); *see also Bell v. Cone*, 543 U.S. 447 (2005). This "highly deferential" standard is "difficult to meet" and "demands that state-court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. __, ___, 131 S.Ct. 1388, 1398 (2011); *see also Harrington v. Richter*, 562 U.S. __, __, 131 S.Ct. 770, 786 (2011) ("If this standard is difficult to meet, that is because it was meant to be."). Petitioner carries the burden of proof to meet this standard. *See Pinholster*, 131 S.Ct. at 1398.

A federal court may not grant a writ of habeas corpus unless the state's adjudication on the merits: 1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States"; or 2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000) (O'Connor, J., concurring). "Under the ("unreasonable application") clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.

The amendments to 28 U.S.C. § 2254, enacted as part of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), require this Court to limit its analysis to the law as it was "clearly established" by precedent at the time of the state court's decision. Section 2254 provides:

> d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

*See* 28 U.S.C. 2254 (d) (1) and (2)

The "unreasonable application" prong of § 2254(d)(1) permits a federal habeas court to "grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts" of petitioner's case. *Williams v. Taylor,* 529 U.S. 362, 413 (2000); *see also Bell,* 535 U.S. at 694. In other words, a federal court may grant relief when a state court has misapplied a "governing legal principle" to "a set of facts different from those of the case in which the principle was announced." *Lockyer v. Andrade,* 538

10

U.S. 63, 76 (2003) (citing *Williams,* 529 U.S. at 407). To be "unreasonable," the state court's application of Supreme Court precedent must have been more than incorrect or erroneous. *See Lockyer,* 538 U.S. at 75. The state court's application must have been "objectively unreasonable." *See Williams,* 529 U.S. at 409*, see also Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). That high standard has not been met in Petitioner's case. Each issue he raises is addressed sequentially below.

## Analysis

Petitioner contends that his separate sentences for armed robbery and use of a handgun in a felony or crime of violence violate the principles of double jeopardy. ECF Nos. 1 and 1-1. The Fifth Amendment provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb." This prohibition, which protects against multiple punishments for the same offense, *see North Carolina v. Pearce*, 395 U.S. 711, 717 (1969), applies to the states as well as the federal government. *See Benton v. Maryland*, 395 U.S. 784 (1969).

Petitioner presented this claim on direct appeal from the denial of his motion to correct an illegal sentence. It was rejected by the Court of Special Appeals for the following reasons:[4]

> At issue here is whether Riggins has improperly received multiple punishments for the same offense. *See Hudson v. United States*, 522 U.S. 93, 98 (1997) ("The Double Jeopardy Clause provides that no 'person [shall] be subject for the same offence to be twice put in jeopardy of life or limb.'").
>
> In *State v. Lancaster*, 332 Md. 385, 391 (1993), the Court of Appeals made clear that "[u]nder settled Maryland common law, the usual rule for deciding whether one criminal offense merges into another or whether one is a lesser included offense of the other, when both offenses are based on the same act or acts, is the so-called 'required evidence test.'" (Citations omitted). The *Lancaster* Court explained:

---

[4] Petitioner's double jeopardy claim also was rejected by the state post-conviction court for similar reasons. ECF No. 18,, Ex. 18, p. 13.

> The required evidence test focuses upon the elements of each offense; if all of the elements of one offense are included in the other offense, so that only the latter offense contains a distinct element or distinct elements, the former merges into the latter. Stated another way, the required evidence is that which is minimally necessary to secure a conviction for each . . . offense. *If each offense requires proof of a fact which the other does not, or in other words, if each offense contains an element which the other does not, there is no merger under the required evidence test even though both offenses are based upon the same act or acts.* But, where only one offense requires proof of an additional fact, so that all elements of one offense are present in the other, and where both offenses are based on the same act or acts, . . . merger follows . . . .

*Id.* at 391-92 (internal citations omitted) (emphasis added).

In this case, the State correctly avers that armed robbery and use of a handgun in the commission of a felony each has at least one element not contained in the other. First, armed robbery requires proof of a robbery, while use of a handgun does not. Secondly, armed robbery maybe committed with weapons other than a handgun, *see Brooks v. State*, 314 Md. 585, 600 (1989), while use of a handgun specifically requires use of a "handgun" or "antique firearm" as defined by Maryland Code (2002), § 4-201 of the Criminal Law Article ("CL"). See CL § 4-204. Therefore, the two offenses do not merge.

It is also worth noting that the Legislature has expressly provided for separate sentences for these offenses. CL § 4-204(b), which establishes the penalty for using a handgun in the commission of a crime, states:**1**

> b) Penalty. --
>
> (1)(I) A person who violates this section is guilty of a *and, in addition to any other penalty imposed for the crime of violence or felony*, shall be sentenced to imprisonment for not less than 5 years and not exceeding 20 years,
>
> (ii) The court may not impose less than the minimum sentence of 5 years and, except as otherwise provided in § 4-305 of the Correctional Services Article, the person is not eligible for parole in less than 5 years.
>
> (2) For each subsequent violation, the sentence shall to and not concurrent with any other sentence imposed for the crime of violence or felony.

(Emphasis added). The Legislature's determination that a separate sentence shall be imposed for a conviction of use of a handgun is explicit and controlling. *See Whack v. State*, 288 Md. 137, 147-48 (1980) (stating that the statutory language unambiguously imposed separate penalties for armed robbery and use of a handgun). *See also Missouri v. Hunter*, 459 U.S. 359, -69 (1983) ("Where, as here, a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct the trial court or jury may impose cumulative punishment under such statutes in a single trial.").**2**

---

**1** As of October 1, 2011, this section is codified at CL § 4-204(c).

**2** In light of the Legislature's express requirement for separate sentences, merger is patently not required by the rule of lenity. *Holbrook v. State*, 364 Md. 354, 373 (2001) (stating that the rule of lenity "provides that doubt or ambiguity as to whether the legislature intended that there be multiple punishments for the same act or transactions will be resolved against turning a single transaction into multiple offenses") (citations omitted).

Exhibit 5 at 3-5.

This analysis is correct. The crimes committed, armed robbery and use of handgun in the commission of a felony or crime of violence, do not merge under the required evidence test set forth in *Blockburger v. United States*, 284 U.S. 299 (1932), because each crime contains an element that the other does not. *See also* Ex. 18, p. 13 (citing, *inter alia*, *Carey v. Maryland*, 617 F.Supp. 1143, 1151 (D. Md. 1985)). Further, where a state legislature specifically authorizes cumulative punishment under two statutes, there is no double jeopardy violation. *See Missouri v. Hunter*, 459 U.S. 359, 368-69 (1983); *Carey*, 617 F.Supp. at 1151. The state courts correctly rejected Petitioner's double jeopardy claim applying federal law as determined by the Supreme Court. Petitioner has presented no basis for habeas corpus relief under 28 U.S.C. § 2254(d).

Petitioner next asserts his conviction should be reversed because the trial court admitted evidence that he previously had been convicted of a felony despite his willingness to stipulate that he had been convicted of a crime for which he was prohibited from possessing a regulated firearm. ECF Nos. 12 and 12-1. Petitioner argues that the state court's ruling violated the

Supreme Court's holding in *Old Chief v. United States*, 519 U.S. 172 (1997), which held that a federal trial court abused its discretion under the federal rules of evidence when it declined an offer by the defendant to concede the element of a prior felony conviction for purposes of the federal felon in possession of a firearm statute. *Id*. at 174-92.

Respondents argue that in *Old Chief,* the Supreme Court did not purport to clearly establish a constitutional rule binding on the states. *Id*. Thus, they reason, Petitioner cannot rely on *Old Chief* for federal habeas purposes. *See, e.g., Harrington*, 131 S.Ct. at 786 ("[I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court.") (citation omitted). Respondents contend that the state court's rejection of this claim amounts to an application of state law that is not subject to review in federal habeas corpus proceedings. *See* 28 U.S.C. § 2254(a) (authorizing a federal court to entertain a state prisoner's habeas petition "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States"); *Wilson v. Corcoran*, 131 S.Ct. 13, 14 (2011); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."). This contention appears to be correct.

Even if this Court were to assume Petitioner's claim implicated a constitutional rule clearly established by the Supreme Court made applicable to the state courts, it would still fail. First, unlike Petitioner here, the defendant in *Old Chief* did not testify at trial. The Court noted that while prior offense evidence may in a proper case be admissible for impeachment, even if for no other purpose, no such justification was present because the defendant did not testify at trial. *Old Chief,* 519 U.S. at 648. In the instant case, on direct appeal, the Court of Special

Appeals agreed with Petitioner that the trial court erred by not accepting the proffered stipulation, but found that the trial court's error was harmless beyond a reasonable doubt:

> Here appellant offered to stipulate that he had previously been convicted of a qualifying crime. In contravention of *Carter*, however, the trial court required the prosecutor to inform the jury that appellant had previously been convicted of a felony. This was error. Nonetheless, for two reasons, the State insists that the error was harmless. First, the State claims that "the Cumulative effect of the other evidence properly admitted at Riggins' trial for armed robbery clearly outweighed any prejudicial effect of the jury learning that Riggins had, previously been convicted of a felony," In its view, the appellant's guilt was "overwhelming." Second, the State claims that, because appellant testified in his own defense and was impeached with evidence of the prior conviction, this case is distinguishable from *Carter*. According to the State, the jury here learned of the prior conviction and did not resort to speculation as to the nature of the prior conviction.
>
> Appellant argues that because this case "amounted to a credibility battle between the Gordons, who insisted that Appellant was the offender, and Appellant and Jenkins, who both stated that Appellant was not present during this robbery," the error cannot be considered harmless. Further, he claims that the error was not harmless merely because he chose to testify and was cross-examined on the prior conviction, as this occurred only after the jury was already informed of his prior felony conviction.
>
>
> In *Old Chief*, the Supreme Court "impl[ied] no opinion on the possibility of harmless error, an issue not passed upon below." 519 U.S. at 192 n.11. Moreover, the Court of Appeals did not engage in a harmless error analysis in *Carter*. We are satisfied, however, that a harmless error analysis is appropriate here, just as it is in other criminal cases, many of which involve issues of constitutional dimension. Indeed, our research has not revealed any case, either from the federal courts or the courts of our sister states, that do not engage in a harmless error analysis when a court erroneously rejects a defendant's offer to stipulate to a prior conviction that is an element of a crime charged. *See, e.g., United States v. Munoz*, 150 F.3d 401, 412-13 & n.11 (5th Cir. 1998) ("a violation of *Old Chief*'s rule necessitates reversal only when this error is not harmless"; although jury was erroneously informed of defendant's prior aggravated robbery conviction, in light of the strength of the Government's case, the error was harmless), *cert. denied*, 525 U.S. 1112 (1999); *United States v. Daniel*, 134 .F.3d 1259, 1261-65 (6th Cir.) (under *Old Chief*, defendant's offer to stipulate to his felony status should have been accepted, but any error in informing jury of his reckless homicide and kidnaping convictions was harmless), *cert. denied*, 525 U.S. 830 (1998); *United States v. Harris*, 137 F.3d 1058, 1060 (8th Cir. 1998) ("When evidence

of a defendant's guilt is overwhelming, the *Old Chief* violation is harmless." (Citation omitted). Testimony from police officers that defendant admitted owning the gun and from witness who saw him purchase the gun, coupled with evidence that he lived at house where gun was found, amounted to overwhelming evidence of defendant's guilt. Therefore, court's error in rejecting defendant's offer to stipulate to felon status was harmless.), *cert. denied*, 525 U.S. 848 (1998); *United States v. Anaya,* 117 F.3d 447, 449 (10th Cir. 1997) (admission of defendant's prior felony conviction was harmless; *Old Chief* does not preclude a harmless error analysis); *People v. Wade*, 55 Cal. Rptr. 2d 855, 860-61 (Cal Ct. App. 1996) (defendant's offer to stipulate to prior assault and battery convictions should have been accepted, but any error in admitting evidence of the convictions was harmless because, jury did not find defendant guilty of offenses for which the prior convictions posed potential prejudice, the prior convictions were not similar to the firearm possession charge, and defendant had admitted to police officer that he owned the gun); *State v. Lee*, 9772.2d 263, 270 (Kan. 1999) (adopting the reasoning of *Old Chief*, but holding that any error in admitting evidence of defendant's prior aggravated battery conviction was harmless); *State v. Alexander*, 571 N.W.2d 662, 671-73 (Wis. 1997) (defendant was charged with operating a vehicle while intoxicated and one element of offense was that defendant had two or more prior convictions, suspensions, or revocations; defendant agreed to stipulate to the prior convictions and, under *Old Chief*, that element should have been removed from jury's consideration; nonetheless, due to overwhelming evidence of defendant's guilt, the error was harmless); *see also Brown v. State*, 719 So.2d 882, 883, 888-89 (Fla. 1998) (consistent with *Old Chief*, when a defendant offers to stipulate to the convicted felon element of the charge of felon in possession, the trial court must accept the stipulation; trial court erred in admitting evidence of various prior convictions; court was unable to conclude that error was harmless); *People v. Walker*, 812 N.E.2d 339, 319-20, 351 (In. 2004) (trial court erred in refusing defendant's offer to stipulate to his felon status and in admitting evidence of the name of his prior felony conviction; error was not harmless because prior conviction was for possession of a controlled dangerous substance with intent to deliver and the backdrop of the charges for which he was on trial was that the defendant made a delivery of cocaine, was not paid for the cocaine, and returned with a firearm to exact payment; nor was the evidence of the defendant's guilt overwhelming); *State v. Allen*, 375 N.W.2d 82, 84-85 (Minn. Ct, App. 1985) (trial court erred in declining to accept defendant's offer to stipulate to his status as a felon and in admitting certified copies of his four prior felony convictions; due to publicity of the case and defendant's links to several local criminals, appellate court concluded that the jury was substantially influenced by the trial court's refusal to accept defendant's stipulation). *Cf. Hughes v. State*, 346 Md. 80, 92 (citing cases in which appellate courts have held that failure of trial courts to suppress illegally obtained incriminating statements constituted harmless error), *cert. denied*, 522 U.S. 989 (1997); *Logan v. State*, 164 Md. App. 1 (2005) (concluding that court erred in failing to suppress

statement obtained in violation of *Miranda*, but error was harmless); *Bartram v. State*, 33 Md. App. 115, 153 (1976) ("It is, of course, settled law that a *Miranda* error can, indeed, be harmless error"), *affirmed*, 280 Md. 616 (1977); *Cummings v. State*, 27 Md. App. 361, 385 n.5 ("That *Miranda* violation can be harmless error is not to be doubted"), *cert. denied*, 276 Md. 740 (1975).

Turning to appellant's case, we agree with the State that evidence of appellant's guilt was overwhelming. A brief review is in order. Hours before the robbery, appellant had twice been in the Cycle Shop. The first time, Mrs. Gordon assisted him for approximately one hour. The second time, Mr. Gordon spent fifteen to twenty minutes with him. After departing the store the second time, appellant returned about ten minutes later and pulled out a shotgun. During the robbery, appellant ordered the Gordons to a storage room, took two mopeds out of the shop, attempted to chain the Gordons to a file cabinet, and then directed them to enter the bathroom. Clearly, Mr. and Mrs. Gordon, both of whom identified appellant as the robber, spent a significant amount of time in appellant's presence, under conditions where they had ample opportunity to see his face.

Following the robbery, Mr. Gordon observed appellant fleeing on a blue moped. Officer Carter, who happened to be in the area, observed a man pushing a red scooter and a man operating a blue scooter, driving down 36th Street and turning onto Roland Avenue. The officer detained the man on the red scooter and, within seconds, Mr. Gordon appeared and told the officer he had been robbed by two males armed with a sawed-off shotgun. The officer broadcast a description of appellant, the man on the blue scooter.

Officer McCarty heard the broadcast for the robbery and, approximately 240 yards from the corner of 36th Street and Roland Avenue, he found appellant in a grassy area. A "sport bag, kind of reddish, maroon in color," was next to appellant, with a sawed-off shotgun inside the bag. Mr. Gordon had seen appellant place the shotgun in the bag and, at trial, identified the bag recovered by Officer McCarty. In addition, McCarty identified appellant as the man he found hiding in the weeds.

After appellant was detained, he told Officer Carter that he lost his eyeglasses while "getting away in the alley." He asked the police to recover the glasses because he had difficulty in seeing without them. In the alley off Roland Avenue, the police found a pair of glasses that appellant identified as belonging to him, along with the blue scooter.

The chain of events thus led directly from the Cycle Shop to appellant lying in the weeds beside the red bag that contained the shotgun. Despite appellant's testimony denying any involvement in the robbery, and Jenkins's testimony that he did not know appellant, the evidence of appellant's guilt was overwhelming. *See Brown v. State*, 364 Md. 37, 42 (2001) (any error in

admission of gun and weapons examination was merely cumulative; collective effect of other evidence so outweighed prejudicial nature of the gun and weapons examination that there was "no reasonable possibility that the jury's verdict would have been different had the evidence been excluded"); *Rubin v. State*, 325 Md. 552, 578-80 (1992) (improperly admitted evidence constituted harmless error in light of overwhelming evidence of defendant's guilt); *Brooks v. State*, 299 Md. 146, 156 (1984) (error is harmless when "'the cumulative effect of the properly admitted evidence so out-weighs the prejudicial nature of the evidence erroneously admitted that there is no reasonable possibility that the decision of the finder of fact would have been different had the tainted evidence been excluded.'" (Citation and emphasis omitted).

As noted, appellant claims that he made the decision to testify only after the court informed the jury of his prior felony conviction. He alleges that "a criminal defendant has the right, during cross-examination or during his own case, to ask questions about and attempt to mitigate evidence admitted over defense objection." In support of his position, he refers us to *Hillard v. State*, 286 Md. 145 (1979).

We need not reach appellant's contention because, as discussed above, the evidence of appellant's guilt was overwhelming; we can perceive no manner in which the improper stipulation affected the outcome of appellant's trial. *But see People v. Valentine*, 228 Cal. Rptr. 25, 32-33 (Cal. 1986) (trial court's error in declining defendant's offer to concede his prior conviction and in permitting jury to learn nature of the conviction was not harmless; prejudice was not dispelled when defendant testified and was impeached with the same prior convictions because evidence of his guilt was not overwhelming and, once trial court rejected his offer, "it was clear the nature of the priors would be revealed whether he testified or not, and he had nothing to lose by taking the stand.").

Also, because the defendant's testimony was not crucial to his defense, it may well have been that, but for the erroneous ruling, he would not have elected to testify and expose himself, to impeachment[.] [*See*] *United States v. Kemper*, 503 F.2d 327, 329-30 (6th Cir. 1974) (in a case decided prior to *Old Chief*, appellate court concluded that the trial court erred in refusing defendant's offer to stipulate to prior felony conviction and in thus denying his motion to strike language from one of the counts that described the nature of the prior conviction, but ruled that any error was harmless because the jury was made properly aware of the fact and nature of the prior conviction when the defendant was cross-examined about the conviction for purposes of impeachment and, on appeal, he did not contend that he would have exercised his right not to testify if the trial court had granted his motion to strike), *cert. denied*, 419 U.S. 1124 (1975); *United States v. Taney*, 27 F.3d 1245, 1253-54 (7th Cir. 1994) (decided prior to *Old Chief*, where trial court accepted defendant's stipulation as to his prior felony convictions and defendant

> testified; trial court did not abuse its discretion in permitting the government to impeach him with the prior burglary and aggravated robbery convictions because defendant put his credibility in issue by testifying he was the only one who could testify to his state of mind, his prior convictions were not similar to crime charged, and they were remote in time).

Exhibit 2 at 19-27.

Respondents correctly note that a constitutional error is harmless when "it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *Neder v. United States*, 527 U.S. 1, 15 (1999) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)); *see also Delaware v. Van Arsdall*, 475 U.S. 673, 681 (1986). In *Mitchell v. Esparza*, 540 U.S. 12, 17-18 (2003), the Supreme Court opined that, where a state court found a constitutional error harmless, habeas relief could not be granted unless the state court applied harmless-error review in an "objectively unreasonable" manner. In Petitioner's case, the state court provided a well-reasons harmless error analysis setting forth why the trial court's error had no impact on the verdict obtained. Petitioner's guilt is fully supported by the record. This ground provides no basis for relief under 28 U.S.C. § 2254(d).

## Conclusion

Having found no merit in Petitioner's claims, this Court will, by separate Order, deny the Petition for Writ of Habeas Corpus. Because this Court finds that there has been no substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. *See* 28 U.S.C. § 2253(c)(2).

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

January 24, 2013